UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| IN RE: | ) | |
| TELESOURCE SERVICES, LLC | ) | Chapter 11 |
| | ) | Case No. 15-45364-TJT |
| _____ | ) | |
| TELESOURCE SERVICES, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 16-04356- TT |
| SOTEL SYSTEMS, LLC | ) | |
| Defendant | ) | |
| _____ | ) | |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION
TO DISMISS FOR LACK OF JURISDICTION

The Plaintiff Telesource Services, Inc. (the "Plaintiff"), submits this memorandum of law in opposition to the Defendant's Motion to Dismiss the Complaint for Lack of Jurisdiction [Docket No. 9].

Facts

1. On April 6, 2015, the Debtor commenced a voluntary Chapter 11 case in this court.

2. As part of its reorganization efforts, the Debtor sought to enter into a sale transaction pursuant to which it would liquidate all of its assets and distribute the proceeds of the sale to its creditors. [Complaint, ¶ 11]

3. In connection with the sale process, SoTel Systems, LLC ("SoTel"), requested that the Debtor share with it certain confidential operational and business documents for the purposes of determining whether SoTel would bid for the Debtor's assets. [Complaint, ¶ 12]

4. The Debtor agreed to provide the requested information to SoTel on the condition that SoTel agree that it would not use the information for any purpose other than deciding whether to make a bid on the Debtor's assets and participating in the auction of the Debtor's assets. [Complaint, ¶ 13]

5. SoTel agreed to the terms proposed by the Debtor and the Debtor entered into a written confidentiality agreement with SoTel dated July 20, 2015 (the "Confidentiality Agreement"). [Complaint, ¶ 14]

6. A true and accurate copy of the Confidentiality Agreement is attached hereto as Exhibit A.

7. SoTel was given access to Confidential Information of the Debtor as defined in the Confidentiality Agreement. That information included the identity of the Debtor's employees and customers. [Complaint, ¶ 15]

8. On September 30, 2015, the Court entered an Order (the "Sale Order") [Docket No. 239] approving the transfer of substantially all of the Debtor's assets to Paragon Communications, Inc. Paragon subsequently assigned its rights under the bid to its nominee and affiliate, the Plaintiff Telesource Services, Inc. and completed the purchase of the assets in accordance with the terms of the asset purchase agreement approved by the Court (the "APA").

9. The Sale Order provides, among other things, that the Court retains jurisdiction to "[i]nterpret, implement and enforce the terms and provisions of this Order and the terms of the Asset Purchase Agreement, and any waivers or consents thereunder, and of each of the

agreements executed in connection therewith to which the Debtor is a party or that has been assigned by Debtor to Buyer." [Sale Order, ¶ 13(a), page 13] The Sale Order also provides that the Court retains jurisdiction to "Enter orders in aid or furtherance of the Sale and the Transaction." [Id.] [Complaint, ¶ 30]

10. The APA provides that the property transferred to Paragon includes "all other intellectual property and proprietary rights and the right to sue and recover for any past, present or future infringement, misappropriation, dilution or any other causes of action, and to recover damages, proceeds, income, royalties or other payments in connection with or relating to the foregoing." Asset Purchase Agreement, page 7. [Complaint, ¶ 31]

11. Subsequent to the sale, it became evident to Paragon that SoTel, the original stalking horse purchaser, used certain confidential information that it received during the sale period to fully inform itself about the Debtor's business and its operations, including, but not limited to, the identity of the Debtor's customers. SoTel misappropriated that information and used it in manner that was inconsistent with; a) the terms of the written confidentiality agreement it entered into with the Debtor (and is now held by the Plaintiff purchaser); and b) the Sale Order. [Complaint, ¶ 34]

12. Subsequent to the entry of the Sale Order, Paragon proceeded to utilize the business assets of the Debtor that it has purchased for the purposes of carrying on those operations formerly conducted by the Debtor and to continue to grow its own business. [Complaint, ¶ 33]

13. The Plaintiff soon discovered, however, that SoTel, directly or acting through its affiliate VoIPLink, LLC, was actively using confidential information to identify and solicit business from the Debtor's former customers. [Complaint, ¶ 34]

14. SoTel was aware of the APA, the Sale Order and the conveyance of these property rights to the Plaintiff. [Complaint, ¶ 46]

15. The rights conveyed to Paragon included the customer relationships between the Debtor and its various customers. [Complaint, ¶ 47]

16. SoTel was aware of the relationships and intentionally and purposefully acted to deprive Paragon of the benefit of its bargain with the Debtor, by wrongfully misappropriating and using for its own benefit the information that it had derived during the Sale Process. [Complaint, ¶ 48]

17. The Plaintiff has commenced this adversary proceeding seeking to enforce the terms of the Sale Order.

## Argument

A. The Defendant Expressly Consented to the Jurisdiction of this Court.

18. In deciding motions to dismiss pursuant to Rule 12(b)(6), courts consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." Burlington Coat Factory, 114 F.3d at 1426 (emphasis omitted). In the present case, the Confidentiality Agreement is integral to, and relied upon in, the Complaint.

19. The Confidentiality Agreement executed by the Debtor and SoTel, attached hereto as Exhibit A, contains a provision in which the Debtor and SoTel "irrevocably consent to the exclusive jurisdiction and venue of the Bankruptcy Court in connection with any matter

based upon or arising out of this Agreement or the matter contemplated therein." [Exhibit A, page 6, ¶ 13]

20. A consent to jurisdiction is effective to bestow jurisdiction on the Bankruptcy Court. See, In re G.B. Herndon and Associates, Inc., 459 B.R. 148, 159-163. (Bankr. D.C. 2011).

21. Even absent this consent, however, the Court indisputably has jurisdiction over the instant matter.

    B. The Court has Independent Jurisdiction to Enforce its Own Orders and to Preserve the Integrity of the Sales Process.

22. "Under 28 U.S.C. §§ 1334 and 157(b)(2)(N), bankruptcy courts have core subject-matter jurisdiction to approve the sale of estate assets. It is also well-settled that bankruptcy courts have the "corollary jurisdiction to interpret and enforce their own [sale] orders...." In Re USA United Fleet, Inc., 496 B.R. 79, 83 (Bankr. E.D. N.Y. 2013) citing Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.), 428 B.R. 43, 56–57 (S.D.N.Y.2010), aff'g, In re Gen. Motors Corp., 407 B.R. 463 (Bankr.S.D.N.Y.2009) ("GM "); Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009)

23. As a general rule, when an order becomes final, a court's jurisdiction cannot be attacked collaterally by a party on notice. Id. citing Kontrick v. Ryan, 540 U.S. 443, 456 n. 9, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (per curiam) ("Even subject-matter jurisdiction [ ] may not be attacked collaterally.").

24. The Plaintiff's complaint seeks the enforcement of the Court's Sale Order, a specifically enumerated provision of 11 USC § 157(b)(2) providing for core jurisdiction. 11 USC § 157(b)(2)(N).

25. The Plaintiff brings this action to enforce its claim to certain property of the bankruptcy estate, those rights to proprietary and confidential information that formed part of the bankruptcy estate. That question, what is property of the bankruptcy estate, 11 USC § 541(a), can be addressed only by this Court.

26. In its memorandum, the Defendant argues that the outcome of this proceeding won't have any conceivable effect on the bankruptcy estate itself, but as the court in In re Motors Liquidation Company, 514 B..R. 377, (Bankr. S.D. N.Y. 2014), observed, that argument misses the point:

> The three types of jurisdiction that district (and hence bankruptcy) courts may exercise are thus those colloquially referred to as (1) "arising under"; (2) "arising in"; and (3) "related to" jurisdiction. The second of these—"arising in"—focuses on whether the claim would have no existence outside of bankruptcy. "Matters involving the enforcement or construction of a bankruptcy court order are in this category." As in Ames Department Stores, [317 B.R. 269] at the Elliott Plaintiffs make their subject matter jurisdiction contentions on the premise that the outcome of the sale order interpretation would have no effect on the debtor's estate. But even assuming such is true …it misses the point. Effect on the estate is the standard for "related to" jurisdiction, not "arising in." The bankruptcy court's subject matter jurisdiction when it comes to construing or enforcing its earlier orders has wholly different underpinnings, as review of any of the nearly dozen decisions cited above would have revealed.

Id. at 381-382; see also, In re Motors Liquidation Company, 522 B.R. 13, 19-21. (Bankr. S.D. N.Y. 2014)

27. The cases cited by the Defendant are inapposite. In In re Holly's Inc., 172 B.R. 545 (Bankr. W.D. Mich. 1994) aff'd 178 B.R. 711 (W.D. Mich. 1995) the court declined to exercise jurisdiction over a post confirmation tax dispute, that is a dispute that related to taxes that became due after the date of the confirmation order. The Complaint in this proceeding specifically seeks to enforce the terms of a pre-confirmation and pre-sale order agreement that has been assigned to the Plaintiff and to recover for breaches that took place pre-confirmation.

28.     In In re Hall's Motor Transit Co., 889 F.2d 250 (3rd Cir. 1989), the Third Circuit affirmed the dismissal for lack of jurisdiction of a challenge to a rezoning of property that had been purchased from the bankruptcy estate. The zoning law, however, was changed subsequent to the sale and was unrelated to the sales process itself.  Here, the Confidentiality Agreement signed by the Defendant was integral to the sales process and incorporated in the asset purchase agreement and the Sales Order. See, In re Marcus Hook Development Park, Inc., 943 F. 2d 261, 265-266 (3rd Cir. 1991) (distinguishing Hall's).

29.     The Plaintiff seeks to enforce an Order of this Court conveying certain assets of the Debtor's bankruptcy estate.  The Complaint raises substantial issues about the integrity of the sales process that have implications not just for the Plaintiff, but for every party that comes before the Court in the context of a bankruptcy sales procedure.  The Court, the Debtor and other parties in interest have a genuine interest in the integrity of the bankruptcy sales process and the ability of the Court to enforce the terms of the ancillary agreements attendant to that process. The Court, in the Sale Order, specifically retained jurisdiction to enforce agreements signed by the Debtor and also those assigned to the Plaintiff. The Confidentiality Agreement qualifies under both prongs of that provision in the Sale Order.

Wherefore, the Plaintiff prays that the Court deny the Defendant's Motion to Dismiss For Lack of Jurisdiction and that the Court grant such other and further relief as is just.

TELESOURCE SERVICES, INC.

By its attorneys,

*/s/ Peter J. Haley*
Peter J. Haley (BBO #543858)
peter.haley@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
Boston, MA 02109
Telephone:     (617) 573-4700


J. Brennan Ryan
brennan.ryan@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
2301 W. Big Beaver Rd. Suite 331
Troy, Michigan 48084

Dated: May 31, 2016

## CERTIFICATE OF SERVICE

I, Peter J. Haley, certify that this document filed through the ECF system will be sent electronically to counsel to counsel to the Defendant and the registered participants as identified on the Notice of Electronic Filing (NEF) on this date.

Dated:   May 31, 2016                             */s/ Peter J. Haley*